LASSER, P.J.T.C.
Taxpayer trustee contests a deficiency tax assessment of $100.68 for the fiscal year ended February 29, 1980, imposed by the Director of the Division of Taxation under the New Jersey Gross Income Tax Act, N.J.S.A. 54A:1-1 et seq. The assessment was imposed on the undistributed income of a testamentary trust created by the will of a New Jersey domiciliary. The ti’ustee, beneficiaries and assets of the trust are all located outside New Jersey.
The Director has moved to dismiss taxpayer’s complaint as untimely filed. Both the taxpayer and the Director have moved for summary judgment on the issue of whether New Jersey may impose an income tax on undistributed trust income. The motions in this case were argued together with the motions in Potter v. Taxation Div. Director, 5 N.J.Tax 399 (Tax Ct.1983), which dealt with taxability of undistributed income of an inter vivos trust under similar facts.
*389 I
Motion to Dismiss Complaint As Untimely Filed
The Director states that N.J.S.A. 2A:3A-4.1(b)(2) and R. 8:4-l(b) provide that a complaint seeking review of an action or determination of the Director must be filed within 90 days of such action or determination. The Director mailed taxpayer a final determination letter dated March 27,1981. The complaint was filed with the Tax Court on June 29, 1981.
The Director argues that the three day period allowed under R. 8:4-2(b) and R. 1:3-3 when notice of the determination is mailed is an invalid extension of the statutory time period. The Director states that statutory deadlines must be strictly construed and may not be extended by court rule. He states that 90 days from March 27, 1981 is June 25, 1981 and contends that the June 29, 1981 filing was untimely.
Taxpayer argues that the complaint was timely filed because R. 8:4-2(b), in accordance with R. 1:3-3, authorizes the addition of three days to the statutory time period where notice of the action is mailed. Taxpayer contends that this provision is a valid exercise of the Supreme Court’s rule-making power under N.J. Const. (1947), Art. VI, § II. He further states that, although the filing deadline was June 28, 1981, he had until June 29, 1981 to file because June 28, 1981 was a Sunday. R. 1:3-1.
N.J.S.A. 2A:3A-A.l(b)(2) provides that complaints seeking review of actions of the Director must be filed “within 90 days of the action so reviewed, pursuant to rules of court.” (Emphasis supplied). When the Legislature provided a 90 day time period “pursuant to rules of court” it granted to the court the authority to prescribe the procedure for the calculation of the time period. R. 8:4-l(b) repeats the 90 day statutory time period and R. 8:4-2(b) refers to R. 1:3-3, a time calculation rule applicable when notice of action of the Director is mailed. R. 1:3-3 does not extend the filing deadline but defines the 90 day statutory period as is permitted by the statute “pursuant to rules of court.”
*390 I therefore find that R. 8:4-2(b) and R. 1:3-3 were validly adopted by the Supreme Court, consistent with the statutory authorization and constitutional exercise of the court’s rule-making authority. See Winberry v. Salisbury, 5 N.J. 240, 74 A.2d 406 (1950). When three days for mailing are added to the date of March 27,1981 before the 90 day filing period begins to run, a filing deadline of June 28,1981 results. Since June 28, 1981 was a Sunday, R. 1:3-1 authorizes filing on the next business day, June 29,1981. Therefore, the Director’s motion to dismiss taxpayer’s complaint for untimely filing is denied.
II
May The Director Impose Gross Income Tax On Undistributed Trust Income?
The issue is whether New Jersey may tax undistributed income of a testamentary trust where the only contact between New Jersey and the trust is the creation of the trust in New Jersey and the jurisdiction and availability of the New Jersey courts.
The following facts are undisputed. J. Russell Parsons, a New Jersey domiciliary, died on June 9, 1970. His will, dated June 20,1969, bequeathed a portion of his estate in trust for the benefit of his daughter, Victoria L. Pennoyer, and her issue. The will was probated in the Essex County Surrogate’s Court. At the inception of the trust, letters of trusteeship were issued to Robert M. Pennoyer, Parsons’ son-in-law. Assets from the estate were distributed to the trust between March 30,1971 and April 20, 1973. A receipt, release and refunding and indemnity agreement was executed on December 15, 1973 and filed in the Essex County Surrogate’s Court in lieu of a formal judicial accounting as authorized in decedent’s will.
From its inception, the sole trustee of the trust has been Robert M. Pennoyer who, during his entire tenure as trustee, has been a resident and domiciliary of the state of New York. Decedent’s daughter, Victoria L. Pennoyer, has been a resident and domiciliary of New York at all times since the creation of *391 the trust. Mrs. Pennoyer has four children and one grandchild, who are also beneficiaries of the trust. Neither her four children nor her grandchild are residents or domiciliaries of New Jersey.
The trust is a discretionary trust, the trustee being empowered to distribute or accumulate income and principal. The beneficiaries have no right to compel the trustee to distribute trust income to them. The trust must terminate 21 years after the death of decedent’s last surviving child, at which time principal and accumulated income are distributable to the beneficiaries. Under the terms of article nine of the will creating the trust, the trustee is entitled to compensation in accordance with the laws of New York. In addition, article nine provides that the trustee is not required to furnish a bond or to make an accounting to any court to ensure the faithful performance of his duties.
The trust assets consist of cash, securities and an interest in a Delaware limited partnership. The cash and securities are maintained in a custody account at Fiduciary Trust Company of New York in New York City. Fiduciary Trust performs investment management services for the trustee from its offices in New York City. The general partner and all assets of the Delaware limited partnership are located outside New Jersey. Trust assets have not been maintained in New Jersey since the trustee received them from the executors of the Parsons estate.
The trustee filed a New Jersey fiduciary income tax return for the fiscal year ended February 29, 1980, which reported no New Jersey income tax due from the trust. By letter dated March 27,1981, the Director imposed on the trustee a deficiency tax assessment of $100.68 on the undistributed income of the trust. Taxpayer filed a complaint with the Tax Court on June 29, 1981 contesting this assessment.
Taxpayer trustee claims that imposition of the gross income tax on this trust income violates the due process requirements of U.S. Const., Amend. XIV, and N.J. Const. (1947), Art. I, par. 1. Taxpayer also contends that the New Jersey Gross Income Tax *392 Act is invalid on its face and as applied, to the extent that it seeks to tax the undistributed income of the subject trust. Taxpayer, claims that there are insufficient contacts with the State of New Jersey to subject the income of the trust to taxation by New Jersey.
The Director contends that taxation of the trust income is authorized by express wording in the New Jersey Gross Income Tax Act, N.J.S.A. 54A:l-2(o )(2), and that there are sufficient contacts with New Jersey to provide a tax situs in this State. The Director argues that these contacts are the creation of the trust in New Jersey pursuant to the will of a resident decedent, the jurisdiction of the courts of New Jersey over the trustee and the trust assets and the availability of the New Jersey courts to the trustee and beneficiaries.
The New Jersey Gross Income Tax Act imposes tax on the New Jersey gross income of all individuals, estates and trusts. N.J.S.A. 54A:2-1. New Jersey gross income is defined in N.J.S.A. 54A:5-l(h) to include “[n]et gains or income derived through estates or trusts.” A “resident trust” is defined in N.J.S.A. 54A:l-2(o)(2) as “... a trust, or a portion of a trust consisting of property transferred by will of a decedent who at his death was domiciled in this State...” N.J.S.A. 54A:5-3 taxes income of a trust which has not been distributed or credited to a beneficiary. A resident trust is taxed on its undistributed income from all sources, both within and without the State, while a nonresident trust is taxed only on income from New Jersey sources.
The power of a state to tax the undistributed income of a trust, as with an individual or corporation, is dependent on the existence of sufficient contacts with that state to satisfy constitutional due process requirements. See Guaranty Trust Co. v. Virginia, 305 U.S. 19, 59 S.Ct. 1, 83 L.Ed. 16 (1938); Shaffer v. Carter, 252 U.S. 37, 40 S.Ct. 221, 64 L.Ed. 445 (1920); Avco Fin. Services, etc. v. Taxation Div. Director, 4 N.J.Tax 349 (Tax Ct.1982). Constitutional due process requires a minimal link between the taxing state and the individual, property or trans *393 action it seeks to tax, and also requires that a state grant some benefit to the taxpayer in return for the tax imposed. Miller Bros. Co. v. Maryland, 347 U.S. 340, 344-345, 74 S.Ct. 535, 538-539, 98 L.Ed. 744 (1954); Wisconsin v. J.C. Penney Co., 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267 (1940), reh’g den. 312 U.S. 712, 61 S.Ct. 444, 85 L.Ed. 1143 (1941). This court recently affirmed its adherence to this test in Hough v. Taxation Div. Director, 2 N.J.Tax 67, 72 (Tax.Ct.1980), aff’d 4 N.J.Tax 528 (App.Div.1981), certif. den. 87 N.J. 418, 434 A.2d 1092 (1981).
No United States Supreme Court decision directly addresses the issue now before this court, taxability of undistributed income of a trust. However, several state courts have considered this issue.
In Mercantile-Safe Deposit and Trust Co. v. Murphy, 19 A.D. 2d 765, 242 N.Y.S.2d 26 (App.Div.1963), aff’d 15 N.Y.2d 579, 255 N.Y.S.2d 96, 203 N.E.2d 490 (Ct.App.1964), New York sought to impose an income tax on the accumulated income of an inter vivos trust funded, in part, by intangible assets transferred to the trust by a “pour-over” provision of settlor’s will. The settlor and the beneficiary were New York domiciliaries; the trustee was a Maryland domiciliary, and the trust assets were held and administered in Maryland. The Appellate Division held that New York could not constitutionally tax the accumulated trust income, even though the trust was a “resident trust” under New York tax law. The Court of Appeals affirmed, holding that the state’s imposition of the income tax on this trust was an unconstitutional attempt to tax beyond its borders.
Taylor v. State Tax Comm., 85 A.D.2d 821, 445 N.Y.S.2d 648 (App.Div.1981), relying on Mercantile, denied New York the right to tax income of a testamentary trust created by a New York domiciliary. One of the trust’s assets was a parcel of Florida real property, and one of the three co-trustees was a New York trust company. Florida law prohibited the New York trustee from acting with regard to the Florida real property. The two trustees who were not residents of New York sold the Florida land, and New York sought to tax the proceeds of the *394 sale. The New York Appellate Division stated that although the trust qualified as a resident trust under the New York income tax statute because the settlor died a New York domiciliary,[1] that fact alone did not constitute a sufficient nexus with New York to subject the trust income to taxation. 445 N.Y.S.2d 648 at 649. Since the trust asset in question, the Florida land, was not located in New York and the New York trustee was disqualified from administering that asset, the court found no taxable situs in New York with respect to the income generated by the Florida land.
Bayfield County v. Pishon, 162 Wis. 466, 156 N. W. 463 (Sup.Ct. 1916) and City of Augusta v. Kimball, 91 Me 605, 40 A. 666 (Sup.Jud.Ct.1898) support the principle relied on in Mercantile and Taylor that settlor’s domicile in the taxing state, by itself, does not establish a tax situs in the taxing state. In Pishon, a Wisconsin decedent domiciliary created a testamentary trust whose trustee, beneficiaries and intangible corpus were located outside Wisconsin. The trustee was required by law to make annual accountings to the Wisconsin court. The Wisconsin Supreme Court held that Wisconsin lacked power to impose an income tax on income generated by the trust because the income “was not derived from property located or business transacted in the state of Wisconsin.” 156 N.W. at 464. The court rejected the contention that because Wisconsin courts oversaw administration of the trust, the trust property was constructively in Wisconsin.
In Kimball, a personal property tax was levied by the City of Augusta on the corpus of a testamentary trust created by a Maine domiciliary. The beneficiaries were Maine domiciliaries, but the trustees and intangible trust assets were not located in Maine. The court held that the tax could not be imposed on the trust corpus because the trust lacked a Maine situs, finding that *395 the fact that a Maine court probated the will and had jurisdiction over the administration of the trust did not confer authority to tax. 40 A. at 668.
A different result was reached in First National Bank of Boston v. Harvey, 111 Vt. 281, 16 A.2d 184 (Sup.Ct.1940), on facts nearly identical to those of Mercantile. The Harvey court upheld imposition of Vermont income tax on undistributed income of a testamentary trust created by a Vermont decedent and administered in Massachusetts by a Massachusetts trustee. The court held that trusts administered in Vermont courts have a taxable situs in Vermont, regardless of where the trustee is domiciled or where the assets are actually located. The court did not base this conclusion on an analysis of constitutional nexus requirements because it reasoned that acquisition of property by will or descent is not a right but a privilege granted by the state and not protected by any constitutional guarantees.
The Director relies on Harvey and questions the soundness of Mercantile because of its reliance on Safe-Deposit and Trust Co. v. Virginia, 280 U.S. 83, 50 S.Ct. 59, 74 L.Ed. 180 (1929). The Director has questioned the continued validity of Safe-Deposit in light of Guaranty Trust Co. v. Virginia, 305 U.S. 19, 59 S.Ct. 1, 83 L.Ed. 16 (1938), and Greenough v. Newport Tax Assessors, 331 U.S. 486, 67 S.Ct. 1400, 91 L.Ed. 1621 (1947), reh’g den. 332 U.S. 784, 68 S.Ct. 28, 92 L.Ed. 367 (1947).
In Safe-Deposit, a Virginia resident created an inter vivos trust whose trustee resided in Maryland and held and managed the trust assets there. The settlor died a Virginia domiciliary, and estate assets were “poured-over” into the trust for the benefit of decedent’s two children. Trust income was to be accumulated until the children reached the age of 25, when each would be entitled to one-half of the principal and accumulated income. A property tax levied on the trust corpus by Accomac County, Virginia, was declared unconstitutional by the Court, which held that the intangible trust assets acquired a situs in Maryland and, therefore, the tax represented an attempt on the part of Virginia to tax beyond its borders. The Court further *396 stated that to hold otherwise would “involve possibilities of an extremely serious character by permitting double taxation, both unjust and oppressive.” 280 U.S. at 93, 50 S.Ct. at 61.
In Guaranty Trust, the Court held that income of a trust created by a Virginia domiciliary which was distributed to a Virginia beneficiary was taxable by Virginia despite the fact that the trustee and the intangible trust assets were located in New York. More importantly, however, the Court held the distributed income taxable by Virginia despite the fact that the identical income was taxable by New York. The Court rejected the appellant’s claim that this “double, taxation” violated the Due Process Clause and distinguished Safe-Deposit and several other cases by stating:
Those cases go upon the theory that the taxing power of a state is restricted to her confines and may not be exercised in respect of a subject beyond them. Here, the thing taxed was receipt of income within Virginia by a citizen residing there. The mere fact that another state lawfully taxed funds from which the payments were made did not necessarily destroy Virginia’s right to tax something done within her borders. [305 U.S. at 23, 59 S.Ct. at 3].
Double taxation, a matter of great concern to the Safe-Deposit Court, is no longer per se objectionable under Guaranty Trust and more recent interpretations of the Due Process Clause. However, the principle that a state may not impose a tax beyond its borders is still a vital one. This principle, which underlay the Safe-Deposit holding, was reinforced in Guaranty Trust, not questioned by it as the Director argues. The New York Court of Appeals, in its affirmance of Mercantile, noted the distinction between Safe-Deposit and Guaranty Trust and found that Guaranty Trust did not weaken the holding of Safe-Deposit. 255 N.Y.S.2d 96 at 97. I concur with that finding and do not consider Mercantile weakened by its reliance on Safe-Deposit.
In Greenough Rhode Island imposed a property tax on a Rhode Island trustee’s proportionate interest in the corpus of a testamentary trust created under the will of a New York domiciliary. The trust assets were located in New York and one of its trustees was a Rhode Island domiciliary. The will was probated in New York. The court upheld Rhode Island’s right to tax the trust, concluding that Rhode Island “does offer *397 benefit and protection through its law to the resident trustee as the owner of intangibles.” 331 U.S. at 496, 67 S.Ct. at 1405.
Greenough does not weaken Safe-Deposit, nor does it stand for the proposition that there is sufficient nexus to tax a trust if the trustee and trust assets are located outside the state. In Greenough, a trustee was domiciled in Rhode Island, and the trustee’s proportionate interest of the trust assets was taxed by Rhode Island. Location of a trustee in the taxing state is a nexus which did not exist in Safe-Deposit and does not exist in the subject case.
The right of a state to tax the income of intangible property derives from the protection it affords the property or the control it exercises over the persons who own or administer the property. Curry v. McCanless, 307 U.S. 357, 59 S.Ct. 900, 83 L.Ed. 1339 (1939). Whether a state affords protection to or exercises control over property or persons must be decided based on the particular facts of each case. The subject trust was created by the will of a New Jersey decedent. However, a testamentary trust may be administered in a state other than the state of its creation. 5 Scott on Trusts, (3 ed. 1967) § 607 at 3939; Bankers Trust v. Bacot, 6 N.J. 426, 432-33, 78 A.2d 904 (1951); In Re Pfizer, 33 N.J.Super. 242, 258, 110 A.2d 40 (Ch.Div. 1954), aff’d 17 N.J. 40, 110 A.2d 54 (1954). In the subject case, the trust is administered in New York.
Since the trust is not administered in New Jersey and the trustee, trust assets and beneficiaries are not located in New Jersey, the only contact between this trust and New Jersey is the fact that the grantor was domiciled here, letters were issued here, the trustee is amenable to service of process here and the courts are available to resolve disputes relating to the trust.
Courts of states other than the domicile of the settlor may be available to trustees, beneficiaries and third parties, depending on compliance with jurisdictional requirements. In Re Ruperti’s Estate, 194 Misc. 376, 86 N.Y.S.2d 887 (Surrog.Ct.1949), involved a testamentary trust created by a Florida domiciliary where the trustee and trust assets were located in New York. The court *398 held that the New York Surrogate’s Court may take jurisdiction over actions regarding administration of the trust.
The participation of the New Jersey court in the administration of a testamentary trust is limited.[2] The supervision of the court is discretionary and presumably exercised only at the behest of beneficiaries, creditors, the trustee or other interested parties.
In the subject case, I find that creation of the trust in New Jersey and the resultant jurisdiction and availability of the New Jersey courts to enforce or interpret this trust are insufficient contacts with New Jersey to support the Director’s income tax assessment. The creation of the trust in 1971 through the probate process in New Jersey courts is an historical fact which, absent continuing contacts, is not a constitutional nexus justifying income taxation of undistributed income earned in 1979-80. See Safe-Deposit & Trust Co. v. Virginia, supra; City of Augusta v. Kimball, supra; Bayfield Cty. v. Pishon, supra.
The trustee holds legal title to trust property, not the court which granted letters of trusteeship creating the trust. City of Augusta v. Kimball, supra, 40 A. at 668. Therefore, in the subject case neither legal nor' beneficial ownership of interests in the trust are present within New Jersey. I choose not to follow the less persuasive case of Harvey, cited by the Director. The more recent and persuasive New York authority in Mercantile and Taylor which deal with income tax provisions parallel to the New Jersey statute, rejects the contention that taxability of undistributed trust income is based solely on the domicile of the grantor.
In Hellerstein, J. & W., State and Local Taxation (4 ed.) a discussion of Harvey and Mercantile concludes:
*399 As a matter of state tax policy, the result reached in [Mercantile ] has much to commend it, for the state of domicile of the donor or decedent has, at best, only a historical connection with the trust (even if its courts have jurisdiction of accountings by the trustee in the case of a testamentary trust) and the trustee’s activities and the trust assets now have a locus outside the state, [at 869].
The creation of the trust and the probate proceedings which resulted in the transfer of assets to the trust were completed acts, not continuing in nature.
Based on the facts of this case, I conclude that the creation of the subject trust in New Jersey in 1970, the probate proceeding in a New Jersey court and the jurisdiction and availability of the New Jersey courts are not sufficient contacts with the State of New Jersey to support taxation of the 1979-1980 undistributed income of the trust, and therefore, N.J.S.A. 54A:l-2(o)(2) may not constitutionally be applied in the subject case.
The Clerk of the Tax Court is directed to enter judgment denying the Director’s motion to dismiss taxpayer’s complaint for untimely filing, denying the Director’s motion for summary judgment and granting taxpayer’s motion to have the deficiency tax assessment of $100.68, for the fiscal year ended February 29, 1980, set aside.

N.Y.Tax Law § 605(c)(2) defines a resident trust, in pertinent part, as “a trust, or a portion of a trust, consisting of property transferred by the will of a decedent who at his death was domiciled in this state.” It is identical to N.J.S.A. 54A: 1-2(0 )(2).

Until 1971, N.J.S.A. 3A:9-3 required a trustee to settle his account every three years. This accounting requirement was deleted from the statute in 1971 and a provision was substituted providing for settlement of accounts “as the court may require.”